# United States Court of Federal Claims
No. 18-298 C
Filed: August 23, 2018
Reissued: September 6, 2018[1]

|  |  |
|---|---|
| EISENHOWER REAL ESTATE HOLDINGS, LLC, | ) ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| *Defendant*, | ) ) ) |
| and | ) ) |
| CSHV LINCOLN PLACE, LLC, | ) ) ) |
| *Defendant-Intervenor*. | ) ) |

*Sharon A. Roach*, Potter & Murdock, P.C., Falls Church, Va., for plaintiff.

*Matthew P. Roche*, U.S. Department of Justice — Civil Division, Washington, D.C., for defendant.

*Seamus Curley*, Stroock & Stroock & Lavan LLP, Washington, D.C., for defendant-intervenor.

**OPINION AND ORDER**

***SMITH*, Senior Judge**

This pre-award bid protest comes before the Court on the parties' Cross-Motions for Judgment on the Administrative Record. Plaintiff, Eisenhower Real Estate Holdings, LLC ("Eisenhower"), filed its Complaint on February 28, 2018, challenging the General Services Administration's ("GSA" or "Agency") Request for Lease Proposals No. 9VA21222 ("Solicitation" or "RLP"). Plaintiff alleges, *inter alia,* that the Agency unreasonably waived minimum RLP requirements when it issued Amendment 3, conducted a flawed present value

---

[1] An unredacted version of this opinion was issued under seal on August 23, 2018. The parties were given an opportunity to propose redactions, and those redactions are reflected herein.

price analysis, violated procurement regulations, and engaged in unequal treatment of offerors. Plaintiff's Motion for Judgement on the Administrative Record (hereinafter P's MJAR) at 2-4. Furthermore, plaintiff alleges that the GSA's evaluation of proposals was arbitrary, capricious, and not in accordance with law and regulation. *Id*. at 2. Plaintiff seeks declaratory and injunctive relief, attorneys' fees, and any other relief that the Court deems just and appropriate. *Id*. at 53. For the following reasons, plaintiff's Motion for Judgment on the Administrative Record is denied, and defendant and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record are granted.

**I.  Background**

On October 6, 2016, the GSA issued the Request for Lease Proposal No. 9VA2122. Administrative Record (hereinafter "AR") at 49. This RLP seeks to procure a lease for the headquarters of the United States Department of Justice, Drug Enforcement Agency ("DEA"). AR 1. CSHV Lincoln Place, LLC ("Lincoln," "incumbent," or "defendant-intervenor") is the incumbent lessor. AR 69. The RLP sought proposals for commercial office space up to 575,000 Rentable Square Feet ("RSF"). AR 49. The RLP also stated that an awarded lease may not exceed the rate cap in Prospectus PVA-01-WA16 ("Prospectus"), which was submitted to Congress on November 24, 2015. AR 1, 60.

RLP section 1.02(D) required that offerors provide "85 structured/inside parking spaces, reserved for the exclusive use of the Government." AR 49. The "Agency Special Requirements" section of the RLP stated that the "Government requires the right to fully control and secure the parking garage, to include all vehicle and pedestrian entrances." AR 117. While RLP section 1.07 explained that the lease was to be fully serviced, the GSA draft lease attached to the RLP stated that bids should exclude electric costs, as the DEA would pay them. AR 78. The annual rent includes the building shell rent, the applicable Tenant Improvement Allowance (TIA), operating costs, and Building Specific Amortized Capital. AR 65-67. The RLP also included move and replication costs for all offerors, but it explicitly excluded costs stemming from any additional non-Government parking spaces. AR 66.

On November 4, 2016, Eisenhower and Lincoln both submitted their initial offers. AR 302, 569. Eisenhower offered a rental rate of $▬▬/RSF and a conditional cash concession of $▬ million. AR 574, 578. Lincoln offered a rental rate of $▬▬/RSF and a ▬▬▬▬▬ concession in lieu of ▬▬ concession. AR 303. The GSA held discussions with offerors after receiving initial offers, and, on June 21, 2017, both Eisenhower and Lincoln submitted revised offers. AR 963, 1252. Eisenhower offered a revised rental rate of $▬▬/RSF and reduced its conditional cash concession to $▬ million. AR 1257, 1261. Lincoln offered a revised rental rate of $▬.50/RSF and included the ▬▬▬▬▬▬▬ concession. AR 1065.

On July 6, 2017, the GSA held additional discussion with offerors, and on August 22, 2017, GSA requested that both offerors submit Final Proposal Revisions ("FPR"). AR 1361-66, 1379, 1562. Throughout the course of these discussions, the Agency advised Eisenhower that its ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and reminded Eisenhower that electric costs should be excluded. AR 1564. On September 6, 2017, both Eisenhower and Lincoln submitted their FPRs. AR 1566, 1580. Lincoln offered a rental rate of $▬▬/RSF and a $▬ million cash

concession that would become available at the lease award.  AR 1575, 1577.  Eisenhower offered a rate of $    /RSF, lowered the                                               , and provided a $   million cash concession under the same previously attached conditions.  AR 1585, 1592.

On February 15, 2018, the GSA issued Amendment No. 3.  AR 290.  The Amendment clarified that only the 85 parking spaces for Government vehicles, as specified in paragraph 1.02(D) in the Prospectus, would count toward the net present value ("NPV") evaluation.  AR 296.  The Amendment also asked that both offerors confirm that the pricing in their respective FPRs remained unaffected.  *Id*.  Plaintiff responded by objecting to the Amendment and asked that the GSA rescind it.  AR 2070-71.

Plaintiff filed its initial Complaint on February 28, 2018, and its Amended Complaint on March 30, 2018.  On April 18, 2018, plaintiff filed its Motion for Judgment on the Administrative Record.  Defendant and defendant-intervenor each filed their Cross-Motions and Responses to plaintiff's Motion for Judgment on the Administrative Record on May 25, 2018.  On June 5, 2018, plaintiff filed its Response to defendant and defendant-intervenor's Cross-Motions and Reply in Support of its Motion for Judgment on the Administrative Record.  Defendant and defendant-intervenor filed their Replies on June 22, 2018.  The Court held Oral Argument on July 17, 2018.  Both motions are fully briefed and ripe for review.

**II.   Standard of Review**

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  Although the Tucker Act expressly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages."  *United States v. Testan*, 424 U.S. 392, 398 (1976).  Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages."  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part).

This Court has jurisdiction over bid protest actions pursuant to 28 U.S.C. § 1491(b).  The Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for an agency action.  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  An agency procurement action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A).  "The arbitrary and capricious standard applicable [in bid protests] is highly deferential."  *Advanced Data Concepts v. United States,* 216 F.3d 1054, 1058 (Fed. Cir. 2000).  Agencies, and contracting officers in particular, are "'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process."

A Motion for Judgment on the Administrative Record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC") determines whether the administrative body, given all the disputed and undisputed facts in the record, acted in a manner that complied with the legal standards governing the decision under review. *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013). Under RCFC Rule 52.1, the parties are limited to the Administrative Record, and the Court makes findings of fact as if it were conducting a trial on a paper record. *See Bannum*, 404 F.3d at 1354. The Court must determine whether a party has met its burden of proof based on the evidence contained within the Administrative Record. *Id*. at 1355. Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the Administrative Record. *Id.* at 1356.

When a plaintiff claims that the agency's decision violates a statute, regulation, or procedure, the protestor must show that the violation was "clear and prejudicial." *Impresa*, 238 F.3d at 1333 (internal quotation marks omitted). The Court will "interfere with the government procurement process 'only in extremely limited circumstances.'" *EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005). "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989). The Court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974).

### III.   Discussion

#### A.   Amendment No. 3 & Parking Costs

Plaintiff makes two arguments related to Amendment No. 3 and the parking provisions. First, plaintiff alleges that the GSA "depart[ed] from its own policy in issuing Amendment No. 3, whose sole purpose was to modify the calculation of parking costs so that [Lincoln's] proposal would not exceed the Maximum Rental Rate." P's MJAR. at 23. Second, plaintiff contends that internal, parking-related discussions at the GSA support its claim that Amendment No. 3 materially changed the Prospectus. P's MJAR at 45-46.

The government contends that Amendment No. 3 was immaterial, and its sole purpose was to clarify the RLP. Defendant's Cross-Motion for Judgment on the Administrative Record (hereinafter "D's CMJAR") at 21. Amendment No. 3 revised paragraph 3.05 of the RLP. AR 2072. The Amendment clarified that:

> "[o]ther than the cost of parking for the official government vehicles as described in paragraph 1.02D of [the] RLP, the cost of any other parking, as provided in Block 21 of Form 1364 of an offer, will not be evaluated in the [NPV] calculation for purposes of award, nor will it be included in the Government's prospectus compliance analysis."

*Id*.  The GSA then requested confirmation that offeror's pricing was not impacted by the Amendment.  *Id.*

This Court is unpersuaded by either of plaintiff's parking-related arguments.  Plaintiff argues that the GSA issued Amendment No. 3 in order to exclude the parking costs from Lincoln's NPV price analysis.  P's MJAR at 29.  The Court is not convinced that Amendment No. 3 had any impact on the NVP analysis.  Instead, the Administrative Record indicates that Amendment No. 3 simply clarified that only the 85 parking spaces for official government vehicles would be considered under the NPV analysis.  AR 292.  As the Amendment merely clarified an existing provision, the Court is not persuaded that it had any material impact on the RLP.

Plaintiff further contends that the GSA's internal questions reflect the Agency's intention to amend the Solicitation in Lincoln's favor.  *Id*. at 46.  However, the Administrative Record makes it clear those discussions reflect internal confusion over the parking language.  AR 2052.  During those discussions, the GSA expressed concerns that "the DEA customer security and resulting parking control requirement might cause some confusion" for unfamiliar lessors.  *Id*.  As a result of those discussions, the GSA directed the Contracting Officer ("CO") to amend the solicitation, clarifying that only the 85 parking spaces for official government vehicles would be considered as part of the Prospectus compliance analysis.  *Id*.  The CO's decision appears to fall in line with the GSA's past practices of only including security-related parking in evaluating lease proposals.  *See* AR 2064.

Plaintiff knew or reasonably should have known that any parking spaces apart from the referenced 85 spaces would not be included as part of the NPV.  Each iteration of Eisenhower's proposal suggests that it understood that the NPV only included the 85 required parking spaces.  *See* AR 547, 1257, 1585.  Plaintiff offers no real evidence that the GSA's decision to issue Amendment No. 3 was for the express purpose of benefitting Lincoln or that the Agency harbored prejudice towards Eisenhower.  As this Court has not determined that Amendment No. 3 was unreasonable, or that plaintiff was negatively impacted by its issuance, this Court finds that Amendment No. 3 was not prejudicial to the plaintiff.

### B. Electricity

Eisenhower also alleges that the "GSA arbitrarily and capriciously excluded [defendant-intervenor's] electrical costs" from the evaluation, thereby violating both the Prospectus rate cap and the requirement that the rate be fully serviced.  P's MJAR at 2.  Fully serviced rates typically include all operating costs, including electrical expenses.  D's CMJAR 24.  However, the Administrative Record indicates that both Eisenhower and Lincoln were aware that electrical costs would not be included, as both offerors submitted final offers that excluded electric costs.  *See* AR 1585.  Moreover, the Solicitation required offerors to indicate which utilities would be excluded from rental consideration.  AR 64.  Both offerors included electrical costs in their proposals, and the Agency excluded those electrical costs when analyzing both offers.  As such, the Court finds no support for plaintiff's argument that the GSA excluded electrical costs to its detriment.

### C. $▮ Million Concession

Plaintiff further alleges that the GSA irrationally considered and accepted Lincoln's $▮ million cash concession as part of its NPV analysis, despite insufficient information about the conditions attached to the concession. P's MJAR at 27. Plaintiff contends that the cash concession was conditional, and therefore non-compliant. *Id*. at 27-28. Plaintiff also argues that, because the conditions were removed from the concession in the final offer, Lincoln's concession was illusory. P's MJAR at 27. The Court is not persuaded by either argument.

However, as the government points out, the cash concession was not a requirement of the RLP, and accepting it along with its conditions was not a procurement violation. D's CMJAR at 27. Plaintiff objects to the conditions attached to Lincoln's cash concession. However, the Administrative Record makes it clear that a cash concession was not a solicitation requirement, but rather an optional element that could make an offer more competitive. *See* AR 152, 153. As such, accepting the cash concession, along with its conditions, was not a procurement violation.

Moreover, Lincoln's conditions were substantially similar to the conditions attached to Eisenhower's $▮ million cash concession. Plaintiff's FPR included, among other things, the condition that the concession may not be used "to offset the initial [TIA]." AR 1592. Lincoln's proposal included a similar condition, stating that the concession may not be used to "pay down the [TIA]". AR 1913. As the conditions attached to both cash concessions were substantially similar, plaintiff has not demonstrated that the Agency's acceptance of Lincoln's optional cash concession was unfair.

The Court is similarly unpersuaded by plaintiff's argument that removing the conditions from the concession offered in the FPR was unreasonable for the following reasons: (a) the conditions did not affect the price or the NPV analysis in a material way; (b) the Solicitation did not require conditions; and (c) Eisenhower has not demonstrated prejudice, as Lincoln's conditions were the same or substantially similar to those attached to Eisenhower's cash concessions. *See* AR 152, 153, 1913, 1592. Specifically, Lincoln's FRP stipulated that the Agency "at its sole option, may use this Additional Cash Allowance in any combination it determines, including, but not limited to, funding tenant improvements to the Leased Premises, for reimbursement of additional services and/or as additional free rent." AR 1913. Eisenhower also listed several ways in which the Agency could use its cash concession, including "fund[ing] tenant improvements" and "as rental abatement upon lease commencement." AR 1592.

It seems clear to this Court that the GSA's conduct was not biased against Eisenhower. Furthermore, as the value of Lincoln's cash concession remained unchanged after Lincoln was selected as the apparent successful offeror ("ASO"), the concession was not materially modified. As such, the Court finds that accepting Lincoln's $▮ million cash concession was neither arbitrary nor capricious.

### D. Unfair Discussions/Continued Negotiations

Plaintiff argues that the communications between the GSA and defendant-intervenor after Lincoln was identified as the ASO were "unequal" and improper. P's MJAR at 32. Specifically,

plaintiff alleges that those discussions violated Federal Acquisition Regulation ("FAR") 15.306(a). *Id.* Given the terms of the RLP, the relevant provisions of the FAR, and the controlling precedent, the Court is unpersuaded by plaintiff's argument. The Solicitation specifies that the selected offeror would engage in clarifying conversations with the GSA in order to finalize the lease. AR 67, 1365, 1564.

Regardless, plaintiff takes issue with the communications that occurred after Lincoln had been identified as the ASO. Plaintiff fails to recognize that communication between the GSA and the successful offeror, after its identification as the ASO, differs from the type of discussions that proceed final proposal revisions. In fact, the controlling statute expressly distinguishes the two types of communication. FAR 15.306(a) defines clarifications as "limited exchanges" that are intended to give offerors "the opportunity to clarify certain aspects of proposals [. . .] or to resolve minor or clerical errors." FAR 15.306(a). FAR 15.306(d), in turn, states that "negotiations are exchanges…between the Government and offerors, that are undertaken with the intent of allowing the offeror to revise its proposal." FAR 15.306(d). When those negotiations are "conducted in a competitive acquisition, they…are called discussion." *Id.*

Furthermore, this Court has recognized the difference between discussions and clarifications, and has previously held that "[u]nlike discussions, which must be conducted equally with all offerors within the competitive range, *see* FAR 15.306(d)(1), an agency has the discretion to engage in clarifications with just one offeror." *Mil-Mar Century Corp. v. United States*, 111 Fed. Cl. 508, 535 (2013) (citing to *DynCorp Int'l LLC v. United States*, 76 Fed. Cl. 528, 540 (2007)). Here, after Lincoln was selected as the ASO, the GSA engaged in clarifying conversations with Lincoln pursuant to FAR 15.306(a). These exchanges included adjusting meeting times, setting security requirements for a guard booth, and implementing clerical changes to the Lease. AR 2427-2428, 2430-2432, 2440-2443. As those exchanges conformed to the terms of the Solicitation, adhered to the FAR, and conformed to relevant precedent, the Court finds no basis for the unfairness and violation that the plaintiff urges.

### E.   Final Offer Submissions

Arising out of its belief that the Agency's clarifying communications constituted the type of discussions that precede proposal revisions, plaintiff contends that the GSA should have allowed plaintiff to revise its proposal. P's MJAR at 37. In pursuit of that argument, plaintiff cites to FAR 15.307, which states, in relevant part, that "[a]t the conclusion of discussions, each offeror still in the competitive range shall be given an opportunity to submit a final proposal revision." *Id.* (citing FAR 15.307). Plaintiff further points to FAR 15.306(d), which states that "[n]egotiations are exchanges, in either a competitive or sole source environment, between the Government and offerors, which are undertaken with the intent of allowing the offeror to revise its proposal." *Id.* (citing FAR 15.306(d)).

The FAR also provides that, while revisions to proposals after FPRs have been submitted are generally not considered, "a late modification of an otherwise successful proposal, that makes its terms more favorable to the Government, will be considered at any time it is received and may be accepted." FAR 15.208(b)(2). This provision has been incorporated into the GSA's procurement regulations. *See* General Services Acquisition Regulation ("GSAR") 570.303-3

("Follow the procedures in FAR 15.208."). This provision was also expressly incorporated into the Solicitation. *See* AR 133.

Eisenhower correctly characterizes the timing of the events. Plaintiff states that "following the submission of FPRs on September 6, 2017, [the] GSA engaged in further discussions with [Lincoln], and [Lincoln] only." P's MJAR at 38. Plaintiff contends that "[a]s a result of these improper 'discussions,' [Lincoln] materially modified its proposal by reducing its parking costs by over $■■■■■—from $■■ million to $■■ million." *Id*. Plaintiff then posits that it should have been afforded the opportunity to revise its offer, after the submission of final offers and in response to Lincoln's modifications. This argument is unpersuasive.

Once an agency has identified an ASO, it is not required to allow other offerors to submit revised offers. The GSA had already identified Lincoln as the apparent successful offeror. AR 2413. Once that designation was made, the Solicitation allowed Lincoln to modify its terms based on clarifying exchanges, and the GSA could consider and accept those modifications. AR 67. As such, the Agency's decision not to allow plaintiff to provide additional proposal modifications after Lincoln was identified as the ASO was neither arbitrary nor capricious.

Plaintiff has failed to sufficiently demonstrate that the Agency acted arbitrarily and capriciously throughout the course of the Solicitation. The GSA offered Amendment No. 3 to clarify parking requirements. The exclusion of electric costs and acceptance of the $■ million cash concession were reasonable, and neither materially or unfairly impacted the NPV evaluations. The clarifying discussions between the GSA and Lincoln after the ASO determination did not constitute unequal discussions, and the GSA was under no obligation to allow new or revised offers. As such, the Agency's actions were neither arbitrary, capricious, nor contrary to law.

## IV. Conclusion

For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record is **DENIED**. Defendant and defendant-intervenor's CROSS-MOTIONS for Judgment on the Administrative Record are **GRANTED**. The Clerk is directed to enter judgment in favor of defendant and defendant-intervenor, consistent with this opinion.[2]

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

---

[2] This opinion shall be unsealed, as issued, after September 6, 2018, unless the parties identify protected and/or privileged materials subject to redaction prior to that date. Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons therefor.